**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD., FTX TRADING LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES INC. (d/b/a FTX.US), | |
| Plaintiffs, | |
| v. | Adversary Proceeding No. 23-50584 (JTD) |
| ALLAN JOSEPH BANKMAN and BARBARA FRIED, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS BANKMAN AND FRIED'S MOTION TO DISMISS**

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
Gregory T. Donilon (No. 4244)
Marc J. Phillips (No. 4445)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone: (302) 504-7800
gdonilon@mmwr.com
mphillips@mmwr.com

-and-

Jeremy D. Mishkin
(admitted *pro hac vice*)
1735 Market St., 21st Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 772-7246 jmishkin@mmwr.com

*Attorneys for Alan Joseph Bankman and Barbara Fried*
Dated:  January 15, 2024

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...................... 1

NATURE AND STATE OF PROCEEDINGS................................................................ 2

I.     STATEMENT OF FACTS .................................................................................... 3

     A.     Defendants ................................................................................................ 3

           1.     *Mr. Bankman.* ............................................................................ 3

           2.     *Ms. Fried.* ................................................................................. 3

     B.     Alleged Breaches and/or Transactions................................................... 3

           1.     *Stanford University Donations.* ................................................ 3

           2.     *Failure to Implement Internal Controls or Exercise Meaningful Oversight over Alameda Ltd.* ....................................................... 4

           3.     *$10 Million Gift.*...................................................................... 4

           4.     *The Blue Water/Old Fort Bay Property.* .................................... 4

           5.     *Political Donations.* .................................................................. 5

II.     ARGUMENT ....................................................................................................... 5

     A.     Standard for Motion to Dismiss.............................................................. 6

     B.     Counts I–III: The Breach of Fiduciary Duty Claims against Mr. Bankman Must Be Dismissed Because Plaintiffs Have Alleged Neither a Fiduciary Relationship Nor a Breach Thereof. ............................................................ 7

           1.     *Mr. Bankman had no fiduciary relationship with Debtors and has never served as a de facto director.* ......................................... 7

           2.     *Even if a fiduciary relationship existed, Plaintiffs have not plausibly alleged a breach thereof.*............................................. 9

     C.     Counts IV and V: The Aiding and Abetting a Breach of Fiduciary Duty Claims against Mr. Bankman and Ms. Fried Must Be Dismissed for Failure to Allege (1) an Underlying Breach, and (2) Actual Knowledge and Scienter.................................................................................................. 10

           1.     *Plaintiffs have failed to allege an underlying breach of a fiduciary duty on the part of Mr. Bankman-Fried or Mr. Singh.* ............................. 11

           2.     *Plaintiffs have not alleged Defendants had actual knowledge of any alleged breach of fiduciary duty and the necessary scienter.* ............ 11

     D.     Count VI: Knowing Assistance or Knowing Receipt under Antigua Law Is Duplicative, Conclusory, and Should Be Dismissed. ............................................ 14

E.   Counts VIII–XI: Plaintiffs' Fraudulent Transfer Claims, Both Actual and Constructive, Should Be Dismissed Because Plaintiffs Have Not Plausibly or Sufficiently Alleged, *Inter Alia*, Defendants' Intent or Debtors' Insolvency. ........................................................................................... 14

    1.   *Actual fraudulent transfer (Counts VIII and X).* ....................................... 15

    2.   *Constructive fraudulent transfer (Counts IX and XI).* ............................. 17

F.   Count VII: Plaintiffs' Unjust Enrichment Claim Is Duplicative of Other Claims and Should Be Dismissed. ......................................................................... 18

G.   Count XII: Plaintiffs' Claim for Disallowance of Claims Is Procedurally Improper and Premature and Must Be Dismissed. ............................................... 19

H.   Defendants Do Not Consent to Jurisdiction......................................................... 19

III.   CONCLUSION............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................. 6
*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).......................................... 6
*Calma on Behalf of Citrix Sys., Inc. v. Templeton,*
  114 A.3d 563 (Del. Ch. 2015).................................................................................. 18
*Dubroff v. Wren Hldgs., LLC,*
  2011 WL 5137175 (Del. Ch. Oct. 28, 2011) ........................................................... 19
*Frank v. Elgamal,*
  2014 WL 957550 (Del. Ch. Mar. 10, 2014)............................................................. 18
*Glob. Crossing Est. Representative v. Winnick,*
  No. 04-cv-2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ..................... 18
*Harris v. Harris,*
  *289 A.3d 310 (Del. Ch. 2023)* ............................................................................. 7, 8
*Id; In re USDigital, I,*
  *nc.*, 443 B.R. 22 (Bankr. D. Del. 2011) ................................................................. 12
*In re Bayou Steel BD Holdings, L.L.C.,*
  642 B.R. 371 (Bankr. D. Del. 2022) ......................................................... 15, 17, 18
*In re Cred Inc.,*
  650 B.R. 803 (Bankr. D. Del. 2023) ........................................................ 6, 11, 12, 13
*In re Draw Another Circle,*
  602 B.R. 878 (Bankr. D. Del. 2019) ....................................................................... 12
*In re FBI Wind Down, Inc.,*
  581 B.R. 387 (Bankr. D. Del. 2018) ....................................................................... 17
*In re Fedders* N. Am., Inc.,
  405 B.R. 527 (Bankr. D. Del. 2009) (dismissing................................................. 9, 10
*In re Live Well Fin., Inc.*, No.,
  19-11317 (LSS), 2023 WL 4025816 (Bankr. D. Del. June 14, 2023)....................... 6
*In re PennySaver* USA Publ'g, LLC,
  587 B.R. 445 (Bankr. D. Del. 2018) ................................................................ 7, 9, 19
*In re PennySaver USA Publ'g, LLC,*
  602 B.R. 256 (Bankr. D. Del. 2019) ......................................................... 15, 16, 17
*In re Tropicana Ent., LLC,*
  520 B.R. 455 (Bankr. D. Del. 2014) ...................................................................... 6, 7
*In re USA Detergents, Inc.,*
  418 B.R. 533 (Bankr. D. Del. 2009) .................................................................... 9, 10
*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001) ..................................................................................... 12
*Monroe Cnty. Emps.' Ret. Sys. v. Carlson,*
  2010 WL 2376890 (Del. Ch. June 7, 2010) ........................................................... 19

**TABLE OF AUTHORITIES**
( continued)

**Page(s)**

*Prickett v. Am. Steel & Pump Corp.,*
  *253 A.2d 86 (Del. Ch. 1969)* ........................................................................................................ 8

Statutes

11 U.S.C. § 502(d) ................................................................................................................ 2, 19
11 U.S.C. §§ 548(a)(1)(A) and 550 ...................................................................................... 2, 15
11 U.S.C. §§ 548(a)(1)(B) and 550 ....................................................................................... 2, 17
Bankruptcy Code §§ 544(b) and 550 ................................................................................ 2, 15, 17
Cal. Civ. Code § 3439.04(a)(1) ................................................................................................. 15
Cal. Civ. Code § 3439.04(a)(2) ................................................................................................. 17
Cal. Civ. Code § 3439.05(a) ..................................................................................................... 17
Del. Code Ann. Tit. 6, § 1304(a)(1) ......................................................................................... 15
Del. Code Ann. Tit. 6, § 1304(a)(2) ......................................................................................... 17
Del. Code Ann. Tit. 6, § 1305(a) ............................................................................................. 17

Rules

Federal Rule of Bankruptcy Procedure 7012(b) .................................................................. 1, 5, 6
Federal Rules of Civil Procedure 12(b)(6) ........................................................................... 1, 5, 6

Barbara Fried ("Ms. Fried") and Alan Joseph Bankman ("Mr. Bankman") (collectively, "Defendants"), by and through undersigned counsel, hereby submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' Complaint (the "Motion") filed contemporaneously herewith and respectfully states as follows:

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

The claims set forth in the Adversary Complaint against Ms. Fried and Mr. Bankman should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b) for failure to state a claim, as explained below.  Plaintiffs' threadbare, conclusory claims are roughly divided into two groups—alleged breaches of fiduciary duties and alleged fraudulent transfers.  Reading between the lines, Plaintiffs seek to capitalize on the sheer fact that Defendants' son was a founder and executive of the Debtor entities.  That relationship is not actionable.  While Plaintiffs allege Defendants interacted with the Debtor entities in limited capacities, neither Defendant *ever* held an executive role of any sort.  To survive a motion to dismiss, a plaintiff's claims must not be merely possible, but rather, plausible.  Plaintiffs' claims here do not meet that threshold and are not legally sufficient for the reasons listed below.

*First*, as to the breach of fiduciary duty claims, (made against Mr. Bankman only), Plaintiffs have not adequately pleaded a fiduciary relationship between Mr. Bankman and Debtors, nor can they, as Mr. Bankman never served as a director, officer, or manager, *de facto* or otherwise. Even if Plaintiffs had plausibly alleged a fiduciary duty, they have not adequately pleaded a breach thereof.  *Second*, as to the aiding and abetting breach of fiduciary duty claims (asserted against both Defendants), Plaintiffs have failed to plausibly allege (1) any underlying breaches of fiduciary duties, (2) that each Defendant had actual knowledge of the alleged breach, and (3) the necessary

*scienter.* *Third*, Plaintiffs have not plausibly alleged the requisite intent to hinder, defraud, or delay on the part of Defendants, as necessary to sustain an actual fraudulent transfer claim. *Fourth*, Plaintiffs have not plausibly alleged Debtors' insolvency, as required for their constructive fraudulent transfer claims. *Fifth*, Plaintiffs' unjust enrichment claim is entirely duplicative of Plaintiffs' other claims. *Sixth*, Plaintiffs' claim for disallowance of claims is premature and procedurally improper. Finally, the claim for "Knowing Assistance or Knowing Receipt" under Antiguan Law is entirely duplicative of the other asserted claims, and constitutes nothing more than conclusory repetitive assertions that are insufficient as a matter of law. Accordingly, dismissal of Plaintiffs' claims is warranted.

## NATURE AND STAGE OF PROCEEDINGS

On September 18, 2023, Plaintiffs Alameda Research LLC, Alameda Research Ltd., FTX Trading Ltd. ("FTX Trading"), West Realm Shires, Inc., and West Realm Shires Services Inc. d/b/a FTX.US ("FTX US") (collectively, "Plaintiffs" or "FTX Group" or "Debtors"), filed this Adversary Complaint (the "Complaint") against Ms. Fried and Mr. Bankman, the parents of Samuel Bankman-Fried ("Mr. Bankman-Fried"). *See* Compl. at 1. The Complaint asserts a mixture of breach of fiduciary duty claims, aiding and abetting breach of fiduciary duty claims, fraudulent transfer, and related claims under Delaware and international law and the Bankruptcy Code against both Defendants.[2]

---

[2] Specifically, Plaintiffs assert three claims for breach of fiduciary duties under Delaware law (Count I), British Virgin Islands law (Count II), and Antiguan law (Count III), respectively, against Mr. Bankman. Plaintiffs further assert claims for aiding and abetting breaches of fiduciary duties under Delaware law against Mr. Bankman (Count IV) and Ms. Fried (Count V). As against both Defendants, Plaintiffs assert claims for knowing assistance or knowing receipt under Antigua law (Count VI), unjust enrichment (Count VII), actual fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550 (Count VIII), constructive fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550 (Count IX), actual fraudulent transfer pursuant to Bankruptcy Code §§ 544(b) and 550 and applicable non-bankruptcy law (Count X), constructive fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 550 and applicable non-bankruptcy law (Count XI), and Disallowance of Claims Pursuant to 11 U.S.C. § 502(d) (Count XII).

## I.    STATEMENT OF FACTS

### A.    Defendants

#### 1.    *Mr. Bankman.*

Mr. Bankman is a tenured professor at Stanford Law School.  Compl. at 8, ¶ 22.  The Complaint does not, and cannot plausibly, allege that Mr. Bankman was ever an actual director, officer, or manager of any Debtor entity.  *Id.*  As acknowledged in the Complaint, the only formal position Mr. Bankman has ever held with any Debtor entity is that of an advisor to the FTX Foundation, commencing at the end of December 2021.  *Id.*  The Complaint does not allege that Mr. Bankman ever served as formal counsel to any Debtor entity.  *Id.*  Rather, it alleges Mr. Bankman provided certain Debtor entities with legal counsel on a *pro bono* basis.  *Id.*

#### 2.    *Ms. Fried.*

Ms. Fried is also a professor at Stanford Law School.  Compl. at 8 ¶ 23.  Plaintiffs agree that Ms. Fried has never held any formal role with any Debtor entity.  *Id.*  ("Fried was not formally employed by any Debtor entity.").

### B.    Alleged Breaches and/or Transactions

#### 1.    *Stanford University Donations.*

The Complaint alleges that Mr. Bankman served as an advisor to FTX Philanthropy and had knowledge of several donations from the FTX Group to Stanford University.  Compl. at 30 ¶ 29.  It does not allege any knowledge of, or participation in, these donations by Ms. Fried.  *Id.* at 30–33.  Further, it does not allege, nor could it plausibly allege, that Mr. Bankman or Ms. Fried ever received any funds that were donated to Stanford, and the Complaint resorts to asserting that they received some undefined "benefit" as a result of that donation.  *Id.* at 30 ¶ 29.  Such an

allegation is of no legal significance, and the counts based on it accordingly fail to state claims as a matter of law.

2.  ***Failure to Implement Internal Controls or Exercise Meaningful Oversight over Alameda Ltd.***

As explained above, the Complaint does not, and cannot plausibly, allege that Mr. Bankman was ever an actual director, officer, or manager of any Debtor entity. Compl. at 8, ¶ 22. Further, the Complaint does not, nor could it plausibly, allege that Mr. Bankman was ever tasked with implementing internal controls or exercising meaningful oversight over any of the Debtor entities. To the contrary, Debtors are well aware that the FTX Group secured compliance guidance from sophisticated outside counsel.

3.  ***$10 Million Gift.***

Plaintiffs' own Complaint describes the alleged $10 million transfer as constituting a "gift" that came directly from Mr. Bankman-Fried's own, personal account. Compl. at 25, ¶ 80, 81. Plaintiffs allege Defendants engaged in conversations regarding the gift "[a]s early as October 2021[,]" at which point in time the FTX Group was widely considered to be not only solvent, but also extremely successful. *Id*. at 24, ¶ 77. As explained by Plaintiffs, "[a]s of January 2022, FTX Trading was purported to be valued at $32 billion, and FTX US at $8 billion." Compl. at 11 ¶ 34. The Complaint does not allege, nor could it plausibly allege, that Defendants had any knowledge to the contrary. The communications offered by Plaintiffs, even if accepted as true, allege only that (1) Defendants had knowledge of an intended gift from their son, and (2) that Mr. Bankman offered tax law assistance in the structure of the gift. *Id*. at 24, 25 ¶ 76–80.

4.  ***The Blue Water/Old Fort Bay Property.***

The Complaint does not allege that Mr. Bankman or Ms. Fried, at any time, used Blue Water as their primary or exclusive residence. To the contrary, the Complaint alleges that

Defendants reside in Palo Alto, California.  The Complaint states that internal documents described Blue Water as an "Alameda receivable" and a property "reconveyed to/purchased for employees." *Id.* at 28 ¶ 89.   Debtors are well aware that at the times relevant to the Blue Water transaction, many FTX Group operations and business properties were located in the Bahamas, and FTX employees lived and worked there.  The Complaint does not allege, nor could it plausibly allege, that Mr. Bankman and Ms. Fried were the exclusive occupants of Blue Water.  Further, Debtors are well aware that sophisticated outside counsel structured and advised the Blue Water transaction.

### 5.  *Political Donations.*

The Complaint alleges Ms. Fried communicated with Mr. Bankman-Fried and Mr. Singh regarding donations to MTG.  *Id.* at 33–37.  The Complaint does not allege, nor could it plausibly allege, that Ms. Fried ever had any knowledge of how any FTX Group political donations were sourced or structured.  Nor does it allege that Ms. Fried had any plan regarding, or knowledge of, any breach of fiduciary duty by Mr. Bankman-Fried or Mr. Singh.  While the Complaint states that Mr. Singh pleaded guilty to having conspired to commit campaign finance law violation, the Complaint does not plausibly allege any specific connection between Mr. Singh's guilty plea and any FTX Group donations to MTG.

## II.  <u>ARGUMENT</u>

The claims against Mr. Bankman and Ms. Fried should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim.  *First*, starting with the breach of fiduciary duty claims, Plaintiffs have not pleaded the existence of a fiduciary relationship between Mr. Bankman and Debtors, nor can they, as Mr. Bankman never served as a director, officer, or manager, *de facto* or otherwise.  *Second*, as to the aiding and abetting breach of fiduciary duty claims asserted against Defendants respectively,

Plaintiffs have failed to sufficiently allege (1) underlying breaches of fiduciary duties, (2) that each Defendant had the requisite knowledge of the alleged breach, and (3) necessary *scienter*.  *Third*, Plaintiffs have not alleged the intent necessary to sustain an actual fraudulent transfer claim.  *Fourth*, Plaintiffs' constructive fraudulent transfer claims have failed to allege Debtors' insolvency.  *Fifth*, Plaintiffs' unjust enrichment claim is entirely duplicative of Plaintiffs' other claims.  *Sixth*, Plaintiffs' claim for disallowance of claims is premature and procedurally improper.  Finally, the claim for "Knowing Assistance or Knowing Receipt" under Antiguan Law is entirely duplicative of the other asserted claims, and constitutes nothing more than conclusory repetitive assertions that are insufficient as a matter of law.  Accordingly, dismissal of Plaintiffs' claims is warranted.

### A.    Standard for Motion to Dismiss.

"Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted."  *In re Tropicana Ent., LLC*, 520 B.R. 455, 466–67 (Bankr. D. Del. 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  "Mere conclusory allegations are insufficient to state a plausible claim for relief. The complaint must contain sufficient facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *In re Live Well Fin., Inc.*, No. 19-11317 (LSS), 2023 WL 4025816, at *2 (Bankr. D. Del. June 14, 2023) (internal footnote and quotations omitted).  As explained by this Court, the claims alleged must be plausible, not "only possible," and "the sheer possibility of liability is not enough." *In re Cred Inc.*, 650 B.R. 803, 814 (Bankr. D. Del. 2023).

**B.**    **Counts I–III: The Breach of Fiduciary Duty Claims against Mr. Bankman Must Be Dismissed Because Plaintiffs Have Alleged Neither a Fiduciary Relationship Nor a Breach Thereof.**

Plaintiffs' claims against Mr. Bankman for breach of fiduciary duty are without merit, regardless of which jurisdiction's law is applied.  A breach of fiduciary duty requires the existence of a fiduciary relationship, which is not present here and has not been pled.  Mr. Bankman has never had a fiduciary relationship with any of the Debtor entities, as he has never served as a director, manager, or officer of the FTX Group, *de facto* or otherwise.  Further, even if Plaintiffs have alleged a fiduciary relationship and duty—which they cannot—they have failed to plead any breach of that duty.  The Complaint only alleges that Mr. Bankman occasionally offered *pro bono* legal advice, and not that he was Debtors' primary legal counsel.  Plaintiffs are well aware that Debtors retained outside counsel to structure and advise on more than one of the transactions alleged in the Complaint.

**1.**    *Mr. Bankman had no fiduciary relationship with Debtors and has never served as a de facto director.*

Under Delaware law, a plaintiff must sufficiently allege "(1) the existence of a fiduciary duty, and (2) that the fiduciary breached that duty[,]" to survive a motion to dismiss.    *In re PennySaver* USA Publ'g, LLC, 587 B.R. 445, 463–64 (Bankr. D. Del. 2018).  "If there is no existing fiduciary duty, then the claim fails, and there is no need to examine whether a fiduciary breached a duty."  *Id.*  Further, "[f]or a fiduciary duty to exist, there must first be a fiduciary relationship."  *In re Tropicana Ent., LLC*, 520 B.R. at 470.

Plaintiffs do not allege that Mr. Bankman served as an official director, officer, or manager of Alameda or FTX US.  Instead, they incorrectly allege that Mr. Bankman served as a *de facto* director.  Delaware applies a strict test when determining whether someone may be held liable as a *de facto* officer.  *Harris v. Harris*, 289 A.3d 310, 331 (Del. Ch. 2023).  Under Delaware

law, a "[*d*]e facto director is one who is in possession of and exercising the powers of that office under claim and color of an election, although he is not a director [*d*]e jure and may be removed by proper proceedings." *Prickett v. Am. Steel & Pump Corp.*, 253 A.2d 86, 88 (Del. Ch. 1969). Further,

> ***Delaware has applied a strict test*** when determining whether someone can be held liable as a *de facto* officer. One of the more thorough discussions of the concept appears in a decision from 1948:
>
> The term "*de facto* officer" may be defined as one who is ***in actual possession of an office under claim and color of election or appointment*** and is in the exercise of its functions and in discharge of its duties, although not authorized by law to act in the official capacity he assumes. According to the weight of authority, a person, who has been duly elected to an office and who continues to exercise its functions after his title has been ended, is a *de facto* officer. ... [T]hree things are necessary to constitute such an officer: (1) The office must have a *de jure* existence or at least one recognized by law; (2) The claimant must be in actual possession thereof; and (3) his possession must be held under color of title or authority.

*Harris*, 289 A.3d at 331 (citation omitted) (emphasis added).

Plaintiffs have not plausibly alleged that Mr. Bankman was ever in actual possession of an Alameda or FTX US office under claim and color of an election or appointment, nor can they. Despite Plaintiffs' conclusory and categorically false allegation that Mr. Bankman was part of FTX's governing structure, Mr. Bankman has never been elected or appointed to any FTX Group position constituting "actual possession" of the office of director or officer. To the contrary, according to the Complaint, outside of advising on a limited, *pro bono* basis, the only formal position Mr. Bankman has ever held within the FTX Group is that of an advisor to FTX Philanthropy. Mr. Bankman's familial relationship and communications to Mr. Bankman-Fried do not make Mr. Bankman, by association, a *de facto* director of Alameda or FTX US. Mr. Bankman did not, at any time, have a fiduciary relationship with Debtors and as such, he did not owe fiduciary duties, and cannot be liable for any alleged breaches thereof.

**2.     *Even if a fiduciary relationship existed, Plaintiffs have not plausibly alleged a breach thereof.***

In the absence of a fiduciary relationship and therefore, fiduciary duty, no further analysis is needed.  *In re PennySaver USA Publ'g, LLC*, 587 B.R. at 463–64.  However, even if such a relationship existed, Plaintiffs have still failed to plausibly allege a breach thereof.  Under Delaware law, directors and officers have certain fiduciary "duties, often referred to as a triad of duties, include the duties of care, loyalty and good faith."  *In re USA Detergents, Inc.*, 418 B.R. 533, 543 (Bankr. D. Del. 2009).  "Delaware law requires that a plaintiff plead facts supporting an inference that officers and directors committed a cognizable breach of duty."  *In re Fedders N. Am., Inc.*, 405 B.R. 527, 541 (Bankr. D. Del. 2009) (dismissing non-director claims for breach of fiduciary duties).  Here, Plaintiffs have not adequately pled a breach of any of the three duties.

First, as to the duty of care, "[a] plaintiff cannot prove a breach of the duty of care without a showing of gross negligence."  *In re Fedders N. Am., Inc.*, 405 B.R. at 539.  While behavior constituting gross negligence is context specific, it "generally requires directors and officers to fail to inform themselves fully and in a deliberate manner."  *Id.*  Here, Plaintiffs' allegations are nothing more than boilerplate, conclusory statements of law and should be dismissed.

Second, as to the duty of loyalty, "to state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."  *In re Fedders N. Am., Inc.*, 405 B.R. at 540.  Here, Plaintiffs have failed to plausibly allege that a self-interested transaction occurred.  Beginning with the Stanford donation allegations, any such donations would have benefitted Stanford, not Defendants. There is no legally sufficient allegation of "self-interest" merely because a faculty member could hypothetically wish to support the institution he served for decades.  As to Blue Water, Plaintiffs have alleged that Blue Water was used by FTX employees as a place of business,

and there is no legally sufficient allegation of "self-interest" in the mere fact of how the property may once have been titled.  Lastly, by Plaintiffs' own description, the $10 million transfer from Mr. Bankman-Fried was a *gift*, paid out of Mr. Bankman-Fried's own, personal account, at a time when the company he owned was worth and valued at tens of billions of dollars.  This negates any conclusory assertion that the gift could plausibly be attributed to "self-interest" on the part of Mr. Bankman.

Third, "[t]he duty to act in good faith . . . is a subsidiary element of the duty of loyalty. The behavior that must be shown to prove a violation of the duty to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)."  *In re Fedders N. Am., Inc.*, 405 B.R. at 540 (internal citation omitted).  Here, Plaintiffs' have failed to plausibly allege even a breach of the fiduciary duty of care, let alone the conduct of higher culpability necessary to plead a breach of the duty of good faith.  Accordingly, Plaintiffs have not plausibly alleged such a breach.

### C. Counts IV and V: The Aiding and Abetting a Breach of Fiduciary Duty Claims against Mr. Bankman and Ms. Fried Must Be Dismissed for Failure to Allege (1) an Underlying Breach, and (2) Actual Knowledge and Scienter.

Under Delaware law, a plaintiff asserting a claim for aiding and abetting breach of fiduciary duty must allege: "(1) the existence of a fiduciary relationship;[3] (2) proof that the fiduciary breached its duty; (3) proof that a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and nonfiduciary."  *In re USA Detergents, Inc.*, 418 B.R. 533, 546 (Bankr. D. Del. 2009) (citations omitted) (emphasis added).  Here, Plaintiffs have failed to allege either an underlying

---

[3] It is noted that unlike Counts I–III, Counts IV and V do not allege any fiduciary duty owed by Mr. Bankman himself. Rather, it appears Plaintiff is alleging the fiduciary relationships are those between Mr. Bankman-Fried and the FTX Group, and Mr. Singh and the FTX Group.

breach or that Mr. Bankman and Ms. Fried, respectively, had actual knowledge and the necessary *scienter*. Accordingly, both Count IV and Count V must be dismissed for failure to state a claim.

> **1.    *Plaintiffs have failed to allege an underlying breach of a fiduciary duty on the part of Mr. Bankman-Fried or Mr. Singh.***

In the unusual instance in which a claim is asserted for aiding and abetting a breach of fiduciary duty, but no claim is asserted for the breaches themselves, a court must first determine whether an underlying breach of fiduciary duty has been properly alleged. *In re Cred Inc.*, 650 B.R. 803, 821 (Bankr. D. Del. 2023). This is such an instance. Plaintiffs have asserted claims of aiding and abetting breaches of fiduciary duties under Delaware law against each Defendant, respectively, for an alleged breach of fiduciary duty by Mr. Bankman-Fried, Mr. Singh, and "potentially other FTX Insiders."

As a starting point, any potential underlying breach by "potentially other FTX Insiders" is insufficient for this Court to find that Plaintiffs have alleged the existence of an underlying breach—as Plaintiffs have failed to allege *who* committed that breach. Therefore, the only underlying breaches that Plaintiffs could be interpreted as alleging would be on the part of Mr. Bankman-Fried and Mr. Singh. Outside of boilerplate, conclusory recitations of law, Plaintiffs have not alleged the necessary elements for a breach of fiduciary duty on the part of Mr. Bankman-Fried or Mr. Singh. Accordingly, Plaintiffs have failed to sufficiently allege such an underlying breach for either, and the aiding and abetting breach of fiduciary duty claims against Mr. Bankman and Ms. Fried should be dismissed.

> **2.    *Plaintiffs have not alleged Defendants had actual knowledge of any alleged breach of fiduciary duty and the necessary scienter.***

Plaintiffs' claims against Mr. Bankman and Ms. Fried for allegedly aiding and abetting breaches of fiduciary duty are woefully deficient, threadbare, conclusory recitations of law insofar as they seek to allege Defendants had actual knowledge and the requisite *scienter*. As this Court

previously explained, **"an aiding and abetting claim must be supported by *proof of an understanding between the parties* with respect to their complicity in any scheme to defraud or in any breach of fiduciary duties."** *In re Cred Inc.*, 650 B.R. at 823 (citations and internal quotations omitted) (emphasis added). Here, Plaintiffs have not included in their pleading *anything* supporting a proof of understanding between either of the Defendants and Mr. Bankman-Fried or Mr. Singh regarding the alleged breaches of fiduciary duty.

Further, Plaintiffs have failed to allege the necessary *scienter* on the part of either Mr. Bankman or Ms. Fried. It is not enough for a plaintiff to plead that a defendant "knew or should have known" of the actions and consequences constituting an alleged breach of fiduciary duty. *In re Draw Another Circle*, 602 B.R. 878, 904–05 (Bankr. D. Del. 2019). Rather, a plaintiff must plead specific facts showing actual knowledge that a defendant knew certain actions would result in a breach of fiduciary duty. *Id; In re USDigital, Inc.*, 443 B.R. 22, 46 (Bankr. D. Del. 2011) ("Knowing participation in a breach of fiduciary duty requires that the third party act with the knowledge that the conduct constitutes such a breach."). As noted by this Court, even allegations indicating a defendant was aware of "red flags" are not enough to sufficiently allege that a defendant was "on notice" that executives were purportedly breaching their fiduciary duties. *In re Cred Inc.*, 650 B.R. 803, 827 (Bankr. D. Del. 2023); *Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001). Further, "[i]t is not necessarily a breach of fiduciary duty to enter into a risky business transaction[,]" and therefore knowledge of such does not automatically equate to alleging actual knowledge for the purposes of an aiding and abetting a breach of fiduciary duty claim. *In re Cred Inc.*, 650 B.R. at 824.

At the time of the allegations against Defendants, there can be no serious doubt that the FTX Group was universally seen as a resounding financial success. Compl. at 11 ¶ 34. Plaintiffs

have not alleged *any* facts tending to show that either Defendant had knowledge of any information to the contrary. Rather, the communications alleged by Plaintiffs actually support an understanding that Defendants believed the FTX Group to be financially healthy and fully capable of charitable donations. Similarly, the Complaint alleges no facts tending to show Defendants were on notice of any "red flags" or "risky business transactions." Regardless, as explained by this Court in *In re Cred Inc.*, even if Plaintiffs had alleged as much, that would not be sufficient to adequately plead an aiding and abetting a breach of fiduciary duty claim.

### a.   Count IV—Mr. Bankman.

Plaintiffs fail to include even a conclusory statement of actual knowledge and the necessary *scienter* as an element of their aiding and abetting claim against Mr. Bankman, let alone allege any proof of an understanding between Mr. Bankman and Mr. Bankman-Fried. In Count IV, Plaintiffs state:

> In the event the Court concludes that Bankman did not owe any fiduciary duty to Alameda and/or FTX US, Bankman participated in and aided and abetted Bankman-Fried's and other FTX Insiders' breaches of their fiduciary duties to Alameda and FTX US . . .

Compl. at 46–47 ¶ 158. Notably, Plaintiffs' claim is devoid of *any* mention of knowledge or *scienter*. This is legally insufficient to state a claim for aiding and abetting a breach of fiduciary duty under Delaware law and the claim must be dismissed for failure to state a claim. While Plaintiffs may respond that their conclusory, one-off mention of "knowingly" in Subsection "b" cures this pleading defect, it does not. Even under the unlikely reading that merely including one word is sufficient to allege knowledge, Plaintiffs have failed to plausibly allege an understanding between Mr. Bankman and Mr. Bankman-Fried in regard to any complicity in committing a breach of fiduciary duty regarding either the alleged Stanford University transfer or any other allegedly improper transaction.

**b.      Count V—Ms. Fried.**

Similarly, Plaintiffs have failed to plausibly or sufficiently plead any knowledge by Ms. Fried of any alleged breach of fiduciary duty.  While, unlike the claim against Mr. Bankman, Plaintiffs do include a threadbare and conclusory statement that "[Ms.] Fried knowingly participated in and aided and abetted[,]" that is the extent of their claim in regard to knowledge. Plaintiffs allege no facts that would plausibly support the claim that Ms. Fried had actual knowledge that any alleged action would result in the breach of a fiduciary duty.  Plaintiffs do not allege any "plan" between Ms. Fried and Mr. Bankman-Fried or Mr. Singh, nor do they include anything to suggest Ms. Fried had actual knowledge that any alleged action would result in a breach of fiduciary duty.

**D.      <u>Count VI: Knowing Assistance or Knowing Receipt under Antigua Law Is Duplicative, Conclusory, and Should Be Dismissed.</u>**

The claim for "Knowing Assistance or Knowing Receipt" under Antiguan Law is entirely duplicative of the other asserted claims, and constitutes nothing more than conclusory repetitive assertions that are insufficient as a matter of law.  As such, dismissal is warranted and appropriate.

**E.      <u>Counts VIII–XI: Plaintiffs' Fraudulent Transfer Claims, Both Actual and Constructive, Should Be Dismissed Because Plaintiffs Have Not Plausibly or Sufficiently Alleged, *Inter Alia*, Defendants' Intent or Debtors' Insolvency.</u>**

Plaintiffs' fraudulent transfer claims, both actual and constructive, concern two alleged transactions—Blue Water and the $10 million gift.  Both alleged transactions occurred at a point in time when Debtors' valuation exceeded approximately $40 billion. Compl. at 11 ¶ 34. Plaintiffs have alleged nothing to show Defendants had any knowledge to the contrary.  Consequently, Plaintiffs have failed to plausibly allege actual intent to hinder, delay or defraud, as required for an actual fraudulent transfer claim, or Debtors' insolvency, as required for a constructive

fraudulent transfer claim.  Accordingly, both Plaintiffs' actual fraudulent transfer and constructive fraudulent transfer claims should be dismissed.

### 1.    *Actual fraudulent transfer (Counts VIII and X).*

Both of Plaintiffs' actual fraudulent transfer claims against Defendants must be dismissed, because Plaintiffs have failed to plausibly or sufficiently allege actual intent to hinder, delay, or defraud any Debtor entity.[4]  Section 548(a)(1)(A) governs federal claims for actual fraudulent transfers and requires a plaintiff to allege that "(i) the transfers were made within 2 years before the petition date, and (ii) the debtor voluntarily or involuntarily made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted."  *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 270 (Bankr. D. Del. 2019).  To adequately plead the heightened intent required for an actual fraudulent transfer claim, a plaintiff must plausibly allege "badges of fraud," including, but not limited to,

> (i) The relationship between the debtor and the transferee;
> (ii) Consideration for the conveyance;
> (iii) Insolvency or indebtedness of the debtors;
> (iv) How much of the debtor's estate was transferred;
> (v) Reservation of benefits, control or dominion by the debtor over the property transferred; and
> (vi) Secrecy or concealment of the transaction.

---

[4] Plaintiffs assert two actual fraudulent transfer claims, federal and state law claims: (1) actual fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550 (Count VIII) and (2) actual fraudulent transfer pursuant to Bankruptcy Code §§ 544(b) and 550 and Applicable Non-Bankruptcy Law, including Cal. Civ. Code § 3439.04(a)(1) and Del. Code Ann. Tit. 6, § 1304(a)(1) (Count X).  The analysis for these claims is substantially the same.  *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 395 (Bankr. D. Del. 2022); *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 270 (Bankr. D. Del. 2019).

*Id*. at 271.  "The presence or absence of any single badge of fraud is not conclusive." *Id*.  "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *Id*.

In respect to both alleged transactions, Plaintiffs have, at best, attempted to plead only two of the six badges of fraud, in the form of a relationship between Debtors and Defendants and a lack of consideration.  While Plaintiffs allege "[m]aterial facts relating to the transfers were concealed[,]" such a statement is a conclusory and threadbare recitation of law insufficient to survive a motion to dismiss.  Plaintiffs allege no specific facts indicating concealment on the part of either transaction.  To the contrary, Plaintiffs allege the existence of communications from Defendants openly discussing both the $10 million gift and the Blue Water transaction.  Notably, Plaintiffs do not allege Debtors' insolvency at the time of the transactions.  Plaintiffs' statement that, "[t]he transfers occurred shortly before or shortly after Plaintiffs incurred substantial debts," is both not interchangeable with insolvency and insufficiently conclusory.

Perhaps most telling, Plaintiffs do not include the percentage of Debtors' estate that each of the alleged transfers would have amounted to.  As conceded by Plaintiffs, "[a]s of January 2022, FTX Trading was purported to be valued at $32 billion, and FTX US at $8 billion."  Compl. at 11 ¶ 34.  The transfers are alleged to have been worth $10 million and $16.4 million, respectively.  This amounts to approximately 0.065% of the Debtors' purported valuation at the time of the transfers. Debtors' counsel have represented previously to the Court that, by August 2023, more than $7 billion in assets have been recovered.  *See Notice of Filing of Hearing Presentation* [Docket No. 2244], Case No. 22-11068 (JTD), at 2.  Even under this valuation, the alleged fraudulent transfers constitute roughly 0.3% of Debtors' estate.

##### 2.    *Constructive fraudulent transfer (Counts IX and XI).*

Plaintiffs have not adequately alleged Debtors' insolvency, and as such, Plaintiffs' claims for constructive fraudulent transfer should be dismissed.[5]    A constructive fraudulent transfer requires a plaintiff to allege: "(i) a transfer [from the debtor] within the applicable time period; (ii) [debtor's] insolvency; and (iii) a lack of reasonably equivalent value (or fair consideration)." *In re FBI Wind Down, Inc.*, 581 B.R. 387, 415 (Bankr. D. Del. 2018).    Here, Plaintiffs' conclusory, threadbare recitation of law as to Debtors' insolvency is not sufficient to survive a motion to dismiss.    Further, Plaintiffs' inconsistent positions regarding insolvency in separate adversary proceedings is impermissible.

Plaintiffs include no specific allegations showing Debtors "(a) were insolvent on the date of the transfers, (b) became insolvent as a result of the transfers; (c) were engaged in a business or a transaction for which any property remaining with Plaintiffs was an unreasonably small capital; or (d) intended to incur, or believed that they would incur, debts that would be beyond Plaintiffs' ability to repay as such debts matured."    To the contrary, as discussed above, at the time of the transfers, the FTX Group was valued at as much as $40 billion.    Compl. at 11 ¶ 34.

This situation is notably distinguishable from many cases discussing similar issues, in that Debtors have been inconsistent in their allegations regarding insolvency.    For example, Debtors previously filed a separate adversary proceeding in these bankruptcy cases, seeking the recovery of WRS stock under the premise that such stock had value on the Petition Date. *See Alameda Research Ltd., et al., v. Samuel Bankman-Fried, et al.*, Adv. Pro. No. 23-50381, Docket

---

[5] Plaintiffs assert two constructive fraudulent transfer claims, federal and state law claims: (1) constructive fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550 (Count IX) and (2) constructive fraudulent transfer pursuant to Bankruptcy Code §§ 544(b) and 550 and Applicable Non-Bankruptcy Law, including Cal. Civ. Code § 3439.04(a)(2), Cal. Civ. Code § 3439.05(a), Del. Code Ann. Tit. 6, § 1304(a)(2), and Del. Code Ann. Tit. 6, § 1305(a) (Count XI).    The analysis for these claims is substantially the same. *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 395 (Bankr. D. Del. 2022); *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 270 (Bankr. D. Del. 2019).

No. 1.  In the context of a corporation's stock, courts disapprove of this type of inconsistent behavior.  As the court in *Global Crossing* explained, "[a]bsent some explanation (and plaintiff provides none), the [Plaintiff] may not argue out of one side of its mouth that [the corporation] was in dire financial straits, completely insolvent, and destined for failure when this stock was transferred, and out of the other side argue that its stock had tremendous value that the creditors of [the corporation] should be permitted to now recover." *Glob. Crossing Est. Representative v. Winnick*, No. 04-cv-2558 (GEL), 2006 WL 2212776, at *9 (S.D.N.Y. Aug. 3, 2006).  The sentiment expressed by the *Global Crossing* court is applicable here—Plaintiffs cannot take inconsistent positions on insolvency as best suits them.  In sum, not only is Plaintiffs' allegation of insolvency merely a conclusory recital, but Plaintiffs have also previously taken a directly contrary position.  This warrants dismissal of Plaintiffs' constructive fraudulent transfer claims.

## F.    Count VII: Plaintiffs' Unjust Enrichment Claim Is Duplicative of Other Claims and Should Be Dismissed.

Plaintiffs' unjust enrichment claim is duplicative of Plaintiff's breach of fiduciary duty and fraudulent transfer claims and therefore, other legal remedies exist, warranting dismissal of the unjust enrichment claim.  Under Delaware law, a plaintiff must allege the following elements to sustain an unjust enrichment claim: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 397 (Bankr. D. Del. 2022).

At the pleadings stage, where an unjust enrichment claim is entirely duplicative of a breach of fiduciary duty claim and is premised upon the same purported breach, the claims are treated in the same manner when resolving a motion to dismiss.  *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 591 (Del. Ch. 2015); *Frank v. Elgamal,* 2014 WL 957550, at *31

(Del. Ch. Mar. 10, 2014); *see also Dubroff v. Wren Hldgs., LLC,* 2011 WL 5137175, at *11 (Del. Ch. Oct. 28, 2011) (denying motion to dismiss fiduciary duty claim and duplicative unjust enrichment claim); *Monroe Cnty. Emps.' Ret. Sys. v. Carlson,* 2010 WL 2376890, at *1 (Del. Ch. June 7, 2010) (granting motion to dismiss fiduciary duty claim and duplicative unjust enrichment claim). Similarly, where an unjust enrichment claim is entirely duplicative of a fraudulent transfer claim, a plaintiff would not be able to adequately allege the fifth element for unjust enrichment.

Here, Plaintiffs' unjust enrichment claim involves two alleged transactions: Blue Water and the $10 million gift from Mr. Bankman-Fried. These transactions are alleged as part of Plaintiffs' breach of fiduciary duty and fraudulent transfer claims, and the unjust enrichment claim is entirely duplicative. Accordingly, there is no absence of remedy provided for by law and the unjust enrichment claim should be dismissed.

## G. Count XII: Plaintiffs' Claim for Disallowance of Claims Is Procedurally Improper and Premature and Must Be Dismissed.

Plaintiffs' claim for disallowance of claims must be dismissed, as they have not yet obtained a judicial determination on the Complaint. "A debtor wishing to avail itself of this [ 11 U.S.C. § 502(d)]'s benefits must first obtain a judicial determination on the complaint." *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 468 (Bankr. D. Del. 2018). Further, "[w]here the debtor has merely commenced an adversary proceeding," such as here, courts generally hold that Section 502(d) is inapplicable. *Id.* Accordingly, Count XII of the Complaint must be dismissed.

## H. Defendants Do Not Consent to Jurisdiction.

Pursuant to Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware 7008-1 and 70012-1, Ms. Fried and Mr. Bankman

do not consent to the entry of final orders or judgments by the Court in connection with this

adversary proceeding.

**III.    CONCLUSION**

       For the foregoing reasons, the Court should dismiss the claims set forth in the Adversary

Complaint against Ms. Fried and Mr. Bankman.

| | |
|---|---|
| Dated:  January 15, 2024<br>Wilmington, Delaware | Respectfully submitted, |

                                              **MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

                                              */s/ Gregory T. Donilon*

                                              Gregory T. Donilon (No. 4244)
                                              Marc J. Phillips (No. 4445)
                                              1105 North Market Street, 15th Floor
                                              Wilmington, Delaware  19801
                                              Telephone: (302) 504-7800
                                              gdonilon@mmwr.com
                                              mphillips@mmwr.com

                                                        -and-

                                              Jeremy D. Mishkin (admitted *pro hac vice*)
                                              1735 Market St., 21st Floor
                                              Philadelphia, Pennsylvania  19103
                                              Telephone: (215) 772-7246
                                              jmishkin@mmwr.com

                                              *Attorneys for Alan Joseph Bankman and Barbara Fried*